**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANTE BLAND,<br><br>            Plaintiff,<br><br>    v.<br><br>OSCAR AVILES, et al.,<br><br>            Defendants. | Civil No. 11-1742 (ES)<br><br>**OPINION** |

**APPEARANCES:**

    DANTE BLAND, #230091, Plaintiff Pro Se
    Essex County Jail
    354 Doremus Avenue
    Newark, NJ 07105

**SALAS**, District Judge:

    Plaintiff, Dante Bland, who is currently incarcerated at Essex County Jail, seeks to bring this action in forma pauperis pursuant to 28 U.S.C. § 1915, asserting violation of his rights under 42 U.S.C. §1983, arising from his incarceration at the Hudson County Correctional Center ("HCCC") in Kearny, New Jersey. This Court will grant Plaintiff's application to proceed in forma pauperis. See 28 U.S.C. § 1915(b). Having reviewed Plaintiff's allegations, as required by 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, this Court will dismiss the federal claims raised in the Complaint, without prejudice to the filing of an amended complaint (that is complete on its face), and decline to exercise supplemental jurisdiction over claims arising under state law.

## I. BACKGROUND

Dante Bland brings this Complaint against Oscar Aviles ( Warden of HCCC), Lt. T. Montelon (corrections officer), and Marcie Dressler (ombudsman), alleging violation of his constitutional rights under 42 U.S.C. § 1983 and violation of New Jersey law, while he was incarcerated at HCCC. Plaintiff asserts the following:

> This is a civil action authorized by 42 U.S.C. 1983 against the above defendants for unsanitary conditions, denial of religious freedom, unconstitutional policies and actions, and state and common law claims of emotional distress, all arising from defendants actions during the following dates December 27, 2009 through August 10, 2010. defendants refusal to provide plaintiff constitutional guarantees . . . .
>
> Defendants had plaintiff in a unlawful confinement lockdown and other unconstitutional prison policies, customs, practices and state and common law claims.
>
> These complaints and conditions have been grieved to all defendants by plaintiff, with no response and are futile at this prison level.
>
> The tables, air vents in rooms are not in any type of human living conditions, due to years of rust buildup.
>
> All defendants have violated the due process rights of plaintiff by engaging in illegal lockdown of the C 500 East Wing, which plaintiff is being housed for pretrial detainee.
>
> Defendants ha[ve] denied plaintiff the right to practice religious freedom. The C-500-East tier is not allowed to attend any religious services.
>
> Defendants have violated plaintiff rights to receive outdoor recreation as well as on wing recreation, since December 2009 through August 2010 . . . .

> The hudson county jail was locking plaintiff in without due process of law locking pretrial detainees in two man cells in excess of 22 hours a day 5 days a week and 32 hours 2 days a week.
>
> Defendants disregard for human life and the rights of pretrial detainees to practice the custom of religion without the interference of a corporation. Plaintiff is thus entitled to exemplary and punitive damages . . . .
>
> Plaintiff is allowed one hour per week law library access on Tuesday only if its room, 10 people can only access the library out of 65 people once a week.
>
> The court should find as a pretrial detainee charged with a ser[ious] crime as (homicide) affects plaintiff ability to prepare defense and a fair trial, to conduct legal research and have access to the courts. The court can eas[ily] determine this claim is handwritten.
>
> Defendants and they malicious abuse of process to unlawfully lockdown plaintiff without due process, violate the constitutional rights of plaintiff. Plaintiff has not violated any rules or regulations of the facility . . .

(Dkt. 1 at 7-11) (paragraph numbers omitted).

Plaintiff seeks damages for violation of his constitutional rights. (Dkt. 1 at 15.)

## II. STANDARD OF REVIEW

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a District Court to screen a complaint in a civil action in which a plaintiff is proceeding in forma pauperis or a prisoner is seeking redress against a government employee or entity, and to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(B), 1915A.

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), hammered the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[1] which was previously applied to determine if a federal complaint stated a claim. See Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009). To survive dismissal under Iqbal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " Iqbal, 129 S. Ct. at 1949 (citation omitted). Officials may not be held liable under § 1983 for the unconstitutional misconduct of their subordinates. Id. at 1948-49. Rather, the facts set forth in the complaint must show that each government-official defendant, through the official's own individual actions, has violated the plaintiff's constitutional rights. Id. This Court must disregard labels, conclusions, legal arguments, and naked assertions. Id. at 1949. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief", and will be dismissed. Id. (citations and internal quotation marks omitted).

The Third Circuit instructs that, to determine the sufficiency of a complaint under the pleading regime established by Iqbal,

> a court must take three steps: First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S.

---

[1] The Conley court held that a district court was permitted to dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. at 45-46.

> Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id.

Santiago v. Warminster Township, 629 F. 3d 121, 130 (3d Cir. 2010); see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009) ("a complaint must do *more than allege the plaintiff's entitlement to relief.* A complaint has to "show" such an entitlement with its facts") (emphasis supplied). The Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of the plaintiff, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89 (2007).

### III. DISCUSSION

A court's initial task is to "tak[e] note of the elements [Plaintiff] must plead" in order to state a claim of liability under 42 U.S.C. § 1983. See Iqbal, 129 S Ct. at 1947-48. Section 1983 of Title 28 of the United States Code provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. See West v. Atkins,

487 U.S. 42, 48 (1988). This Court construes Plaintiff's Complaint as attempting to assert the following claims: (A) the conditions of confinement inflicted punishment without due process of law; (B) violation of the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), see 42 U.S.C. § 2000cc-1; and (C) denial of the First Amendment right of access to courts.

A. Conditions of Confinement

In the Complaint, Plaintiff alleges the following non-conclusory facts: he was confined at HCCC as a pretrial detainee from December 27, 2009, through August 10, 2010, jail officials confined him with another inmate in an 8' X 12' cell for 22 hours a day, five days a week, and 16 hours a day, two days a week, without outdoor recreation, and there was rust build-up on the table and air vents. This Court construes these allegations as an attempt to state a conditions of confinement claim under the Due Process Clause of the Fourteenth Amendment under the standard set forth in Bell v. Wolfish, 441 U.S. 520 (1979), i.e., whether the conditions of confinement amounted to punishment prior to an adjudication of guilt. As the Supreme Court explained,

> [I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal - if it is arbitrary or purposeless - a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.

Bell v. Wolfish, 441 U.S. at 539 (footnote and citation omitted).

The maintenance of security, internal order, and discipline are essential goals which at times require "limitation or retraction of . . . retained constitutional rights." Bell, 411 U.S. at 546. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." Id. at 540. "In assessing whether the conditions are reasonably related to the assigned purposes, [a court] must further inquire as to whether these conditions cause [inmates] to endure [such] genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them." Hubbard v. Taylor, 399 F.3d at 159 (quoting Union County Jail Inmates v. DiBuono, 713 F.2d 984, 992 (3d Cir. 1983)).

The Third Circuit has "distilled the Supreme Court's teachings in Bell into a two-part test. We must ask, first, whether any legitimate purposes are served by these conditions, and second, whether these conditions are rationally related to these purposes." Hubbard v. Taylor, 538 F. 3d 229, 232 (3d Cir. 2008) (citation and internal quotation marks omitted). Moreover, the Fourteenth Amendment standard of unconstitutional punishment, like the Eighth Amendment's cruel and unusual punishments standard, contains both an objective component and a subjective component:

> Unconstitutional punishment typically includes both objective and subjective components. As the Supreme Court explained in Wilson v. Seiter, 501 U.S. 294 . . . (1991), the objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" Id. at 298 . . . . The Supreme Court did not abandon this bipartite analysis in Bell,

>but rather allowed for an inference of mens rea where the restriction is arbitrary or purposeless, or where the restriction is excessive, even if it would accomplish a legitimate governmental objective.

Stevenson, 495 F. 3d at 68.

Objectively, under the Due Process Clause, as well as the Eighth Amendment, prison officials must satisfy inmates' "basic human needs - e.g., food, clothing, shelter, medical care, and reasonable safety." Helling v. McKinney, 509 U.S. 25, 32 (1993). To satisfy the objective component, an inmate must show that he was subjected to genuine privation and hardship over an extended period of time. See Bell, 441 U.S. at 542 (confining pretrial detainees "in such a manner as to cause them to endure genuine privations and hardship over an extended period of time might raise serious questions under the Due Process Clause as to whether those conditions amounted to punishment"); Hutto v. Finney, 437 U.S. 678, 686-87 (1978) ("the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards. A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months").

In this Complaint, Plaintiff alleges that his unit was on lockdown for seven months and, during this time, detainees had no access to outdoor recreation and they were confined for 16 to 22 hours per day, with two persons in an 8' X 12' cell that had rust on the table and air vents. Plaintiff's allegations do not satisfy the objective component because they are not sufficiently serious in that they do not show that Plaintiff endured genuine privations and hardship over an extended period of time. See Hubbard, 538 F. 3d at 235 (holding that triple celling of pretrial detainees and use of floor mattresses did not violate Due Process because the inmates "were not

8

subjected to genuine privations and hardship over an extended period of time"); Foreman v. Lowe, 261 Fed. App'x 401 (3d Cir. 2008) (immigration detainee's confinement in maximum security did not violate due process). Nor do his allegations satisfy Iqbal's plausibility standard. Plaintiff complains that the pretrial detainee unit on which he was housed was on lockdown for seven months, during which time detainees had no outdoor recreation. Although Plaintiff's allegations are consistent with a finding that the lockdown and denial of access to outdoor recreation were arbitrary and purposeless, Plaintiff's allegations are also consistent with restrictions that constitute a rational response by jail officials to an incident or other circumstances warranting a need for heightened security during this seven-month period. As written, Plaintiff's allegations do not satisfy the objective component of a conditions of confinement claim under the Due Process Clause of the Fourteenth Amendment.

Nor do Plaintiff's allegations satisfy the subjective component of a conditions of confinement claim under the Due Process Clause. First, an individual defendant in a civil rights action must participate in the alleged wrongdoing, and Plaintiff does not assert facts showing that each (or any) named individual defendant participated in the alleged wrongdoing, i.e., arbitrarily placing detainees on lockdown and arbitrarily denying outdoor recreation for seven months. See Iqbal, 129 S. Ct. at 1948 ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs"). Second, Plaintiff does not assert facts showing that each named individual defendant was deliberately indifferent to his health or safety. To establish deliberate

9

indifference, a plaintiff must set forth facts "show[ing] that the official was subjectively aware" of the allegedly substandard conditions. See Farmer v. Brennan, 511 U.S. 825, 829 (1994). Moreover, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

Here, Plaintiff's allegations with respect to the subjective component do not satisfy Iqbal's plausibility standard, since the allegations are consistent with the conclusion that defendants reasonably responded to a security concern. Because the Complaint makes no non-conclusory factual allegations showing the deliberate indifference of each named defendant, and because vicarious liability does not apply under § 1983, the Complaint fails to satisfy the subjective component of a conditions of confinement claim as to any named individual defendant. However, because it is conceivable that Plaintiff simply neglected to specify facts that could make out a conditions of confinement claim, this Court will grant him leave to file an amended complaint that is complete on its face stating a conditions of confinement claim under the Due Process Clause and § 1983 against one or more of the defendants named here.

B.  Free Exercise of Religion

The Free Exercise Clause of the First Amendment prohibits prison officials from denying an inmate "a reasonable opportunity of pursuing his faith." See Cruz v. Beto, 405 U.S. 319, 322 & n.2 (1972). The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), see 42 U.S.C. § 2000cc-1, may be violated when officials impose a "substantial burden on [his] religious exercise." However, Plaintiff's Complaint in this case fails to make out a First Amendment free exercise claim because Plaintiff does not allege facts showing that any of the

10

named defendants denied him a reasonable opportunity to pursue his faith. The facts asserted in a complaint must show that a prisoner's request for religious services is based on his own sincerely held religious belief. See Sutton v. Rasheed, 323 F. 3d 236, 250 (3d Cir. 2003) (If a prisoner's request is "not the result of sincerely held religious beliefs, the First Amendment imposes no obligation on the prison to honor that request") (quoting DeHart v. Horn, 227 F. 3d 47, 52 (3d Cir. 2000)).[2] In this Complaint, Plaintiff does not assert what his religious beliefs are, or in what way any defendant interfered with his exercise of his religious beliefs. Nor does Plaintiff allege facts showing that the government imposed a substantial burden on his religious exercise, contrary to RLUIPA. Plaintiff's allegations are accordingly insufficient to state a Free Exercise claim against any named defendant under the Iqbal pleading standard or a claim under RLUIPA. This Court will dismiss the Free Exercise and the RLUIPA claims for failure to state a claim upon which relief may be granted. However, this Court will grant Plaintiff leave to file an amended complaint that is complete on its face stating a Free Exercise Clause and/or RLUIPA claim against one or more of the three named defendants.[3]

---

[2] Secular views are not protected by the Free Exercise Clause, and "[o]nly beliefs which are both sincerely held and religious in nature are protected under the First Amendment." Sutton, 323 F. 3d at 251 (citation and internal quotation marks omitted).

[3] Even where religious beliefs are sincerely held, "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large." Shaw v. Murphy, 532 U.S. 223, 229 (2001) (quoting Pell v. Procunier, 417 U.S. 817, 822 (1987)). Although "prisoners do not forfeit all constitutional protections," it is settled that "[t]he fact of confinement as well as the legitimate goals and policies of the penal institution limits these retained constitutional rights." Bell, 441 U.S. at 546. In deciding an inmate's First Amendment challenge, a court must recognize that "judgments regarding prison security 'are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such

(continued...)

---

³(...continued)
matters.'" Turner v. Safley, 482 U.S. 78, 86 (1987) (quoting Pell v. Procunier, 417 U.S. 817, 827 (1974)). Prison administrators, "who are actually charged with and trained in the running of the particular institution under examination" are the best arbiters of the need for specific prison regulations to maintain institutional safety and promote prisoner rehabilitation. Bell v. Wolfish, 441 U.S. 520, 562 (1979); see also Pell v. Procunier, 417 U.S. 817, 827 (1974) (courts should ordinarily defer to their expert judgment unless officials exaggerate the legitimacy of the interest behind the regulation). To guarantee due deference is shown to prison officials, courts examine the constitutionality of prison regulations using a reasonableness standard set forth in Turner v. Safley, 482 U.S. 78, (1987). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89. Turner requires courts to weigh four factors in determining reasonableness: "whether the regulation has a 'valid, rational connection' to a legitimate governmental interest; whether alternative means are open to inmates to exercise the asserted right; what impact an accommodation of the right would have on guards and inmates and prison resources; and whether there are any 'ready alternatives' to the regulation." Overton v. Bazzetta, 539 U.S. 126, 132 (2003) (quoting Turner, 482 U.S. at 89-91); see also Fraise v. Terhune, 283 F.3d 506 (3d Cir. 2002). Furthermore, "the burden is not on the state to prove the validity of the challenged prison regulation but instead is on the inmate to disprove it." Williams, 343 F.3d at 217 (citing Overton v. Bazzetta, 539 U.S. 126 (2003)).

For example, In O'Lone v. Shabazz, 482 U.S. 342 (1987), Muslim inmates challenged a New Jersey classification regulation which prohibited inmates assigned to outside work details from returning to the prison during the day except in the case of an emergency on Free Exercise grounds because it prevented Muslims assigned to outside work details from attending Juma services on Fridays. The Supreme Court rejected the Free Exercise claim, deferring to the determination of prison administrators that a rule preventing inmates from returning from outside work details was rationally related to security and rehabilitative concerns relating to work:

> There are, of course, no alternative means of attending Jumu'ah; respondents' religious beliefs insist that it occur at a particular time. But the very stringent requirements as to the time at which Jumu'ah may be held may make it extraordinarily difficult for prison officials to assure that every Muslim prisoner is able to attend that service. While we in no way minimize the central importance of Jumu'ah to respondents, we are unwilling to hold that prison officials are required by the Constitution to sacrifice legitimate penological objectives to that end.

Id. at 351-52; see also Fraise v. Terhune, 383 F.3d 506 (3d Cir. 2002) (rejecting inmates' free exercise challenge to regulation designating Five Percent Nation as a security threat group and

(continued...)

C. Access to Courts

The Complaint asserts that access to the law library is limited to one hour per week. Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts, but that right does not include a freestanding right to a minimum amount of time in a law library. See Lewis v. Casey, 518 U.S. 343, 346 (1996); Monroe v. Beard, 536 F. 3d 198, 205 (3d Cir.), cert. denied, Stover v. Beard, 129 S. Ct. 1647 (2008). "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury' - that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy' that may be awarded as recompense' for the lost claim other than in the present denial of access suit." Monroe at 205 (quoting Christopher v. Harbury, 536 U.S. 403, 415 (2002)). To establish standing, "[t]he complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" Monroe at 205-206 (quoting Christopher at 416-17). For example, in Monroe, the United States Court of Appeals for the Third Circuit affirmed dismissal of inmates' access to the courts claim for failure to state a claim:

> In this case, the defendants confiscated all of the plaintiffs' . . . legal materials, including their legal briefs, transcripts, notes of testimony, exhibits, copies of reference books, treatises, journals, and personal handwritten notes. In their initial pleadings, the plaintiffs' claim rested solely on the ground that the defendants confiscated their legal materials, contraband and non-contraband

---

³(...continued)
directing members' confinement in a security threat group unit); Williams v. Morton, 343 F.3d 212, 218 (3d Cir. 2003) (rejecting prisoners' free exercise claim and finding "that providing vegetarian meals, rather than Halal meals with meat, is rationally related to the legitimate penological interests in simplified food service, security, and staying within the prison's budget").

> alike. That claim, on its face, was insufficient to state a claim under Harbury. So too were their subsequent amendments, which alleged that they lost the opportunity to pursue attacks of their convictions and civil rights claims but did not specify facts demonstrating that the claims were nonfrivolous. Nor did they maintain that they had no other remedy to compensate them for their lost claims. Even liberally construing their complaints as we must do for pro se litigants, they do not sufficiently allege that they have suffered actual injury.

Monroe, 536 F. 3d at 206 (citations and footnote omitted).

In this Complaint, Plaintiff provides no facts showing that the one-hour-per-week access to a law library caused actual injury to his pursuit of a non-frivolous legal claim. Nor does he describe the underlying arguable claim well enough to show that it is 'more than mere hope,' or describe the 'lost remedy.'" Monroe at 205-206 (quoting Christopher at 416-17). Accordingly, this Court will dismiss the access to courts claim for failure to state a claim upon which relief may be granted. However, this Court will grant Plaintiff leave to file an amended complaint that is complete on its face stating a First Amendment access to courts claim because, now that he is aware of the appropriate legal standard, it is conceivable that he simply neglected to include the material facts in his original complaint.

D. Supplemental Jurisdiction

"Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381, 387 (1998) (citation and internal quotation marks omitted). Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court

has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3); Growth Horizons, Inc. v. Delaware County, Pennsylvania, 983 F.2d 1277, 1284-1285 (3d Cir. 1993).  In exercising its discretion, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'"  Growth Horizons, Inc., 983 F.2d at 1284 (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)).  Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims.  United Mine Workers v. Gibbs, 383 U.S. at 726; Growth Horizons, Inc., 983 F.2d at 1284-1285.  In this case, since this Court is dismissing every claim over which it had original subject matter jurisdiction, this Court declines at this juncture to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3).

## V. CONCLUSION

Based on the foregoing, this Court will grant in forma pauperis status, dismiss the federal claims (without prejudice to the filing of an amended complaint that is complete on its face), and decline to exercise supplemental jurisdiction.

_____
ESTHER SALAS, U.S.D.J.

Dated: January 18, 2012